## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ALTEGRITY, INC., *et al.*,[1]<br><br>Debtors.<br>────────────────────────────<br>THOMAS KARANIEWSKY and ANGELA RODRIGUEZ<br>on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>ALTEGRITY, INC., ALTEGRITY ACQUISITION CORP.,<br>ALTEGRITY HOLDING CORP., and US<br>INVESTIGATIONS SERVICES, LLC,<br><br>Defendants. | Chapter 11<br><br>Case No. 15-10226 (LSS)<br><br>Jointly Administered<br><br><br>Adv. Proc. No. 15-50204 (LSS) |

## DEFENDANTS' MOTION TO DISMISS COMPLAINT

The above-captioned defendants (collectively, "**Defendants**") move (the "**Motion**") to

dismiss the Complaint in this adversary proceeding, *Class Action Adversary Proceeding*

*Complaint for Violation of WARN Act 29 U.S.C. § 2101, et seq.* [Docket No. 1] (the

"**Complaint**"), for failure to state a claim upon which relief can be granted.

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Altegrity, Inc. (9985); Albatross Holding Company, LLC (2688); Albatross Marketing and Trading, LLC (8643); Altegrity Acquisition Corp. (1480); Altegrity Holding Corp. (1481); Altegrity Risk International LLC (6350); Altegrity Security Consulting, Inc. (5452); CVM Solutions, LLC (9526); D, D & C, Inc. (9552); Engenium Corporation (2269); FDC Acquisition, Inc. (2387); HireRight Records Services, Inc. (1944); HireRight Solutions, Inc. (8954); HireRight Technologies Group, Inc. (1660); HireRight, Inc. (5016); John D. Cohen, Inc. (1738); KCMS, Inc. (0085); KIA Holding, LLC (1333); Kroll Associates, Inc. (6880); Kroll Background America, Inc. (4830); Kroll Crisis Management Group, Inc. (3811); Kroll Cyber Security, Inc. (2393); Kroll Factual Data, Inc. (9911); Kroll Holdings, Inc. (4648); Kroll Inc. (1019); Kroll Information Assurance, Inc. (2283); Kroll Information Services, Inc. (2381); Kroll International, Inc. (1243); Kroll Ontrack Inc. (1650); Kroll Recovery LLC (7082); Kroll Security Group, Inc. (5514); National Diagnostics, Inc. (7132); Ontrack Data Recovery, Inc. (3148); Personnel Records International, LLC (0716); The Official Information Company (1805); US Investigations Services, LLC (9260); USIS International, Inc. (3617); and USIS Worldwide, Inc. (4258).  The location of the Debtors' corporate headquarters is 7799 Leesburg Pike, Suite 1100 North, Falls Church, VA 22043.

**TABLE OF CONTENTS**

**PAGE**

I.      INTRODUCTION ............................................................................................. 1

II.     FACTS ALLEGED BY PLAINTIFFS............................................................ 2

III.    DISCUSSION .................................................................................................. 4

      A.      Jurisdiction........................................................................................... 4

      B.      The *Iqbal/Twombly* Standard for This 12(b)(6) Motion ........................ 5

      C.      The Complaint Fails to Allege 50 Employment Losses at a Relevant
             Single Site of Employment ..................................................................... 5

      D.      The Complaint Fails to Allege Facts (Not Legal Conclusions) Showing
             That Any Altegrity Defendant Is a "Single Employer" With USIS ................... 11

      E.      The Facts Alleged in the Complaint Conclusively Rebut Plaintiffs' Prayer
             for Administrative Expense Priority ..................................................... 15

      F.      Dismissal Should Be Entered Without Leave to Amend.................................... 15

IV.     CONCLUSION.............................................................................................. 15

TABLE OF AUTHORITIES

PAGE

CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)............................................5, 13, 14

*Azzata v. American Bedding Industries, Inc.,*
    432 B.R. 115 (Bankr. D. Del. 2010) ......................................................................................14

*Bailey v. Jamesway Corp. (In re Jamesway Corp.),*
    No. 95 B 44821, 1997 Bankr. LEXIS 825 (Bankr. S.D.N.Y. June 11, 1997) ...........................6

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)...................................................5, 13

*Ciarlante v. Brown & Williamson Tobacco Corp.,*
    143 F.3d 139 (3d Cir. 1998)..........................................................................................8, 10, 11

*Ciarlante v. Brown & Williamson Tobacco Corp.,*
    No. 95-4646, 1996 U.S. Dist. LEXIS 16741 (E.D. Penn. Nov. 6, 1996) ...............................10

*Czarniak v. Entertainment Publications, LLC (In re Entertainment Publications, LLC),*
    No. 13-50912, 2014 Bankr. LEXIS 1556 (Bank. D. Del. Mar. 12, 2014)..................12, 13, 14

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir. 2009)......................................................................................................5, 11

*Frymire v. Ampex Corp.,*
    61 F.3d 757 (10th Cir. 1995) .....................................................................................................6

*Hampton v. Navigation Capital Partners, Inc.,*
    No. 13-747-LPS, 2014 U.S. Dist. LEXIS 114930 (D. Del. Aug. 19, 2014)...........................14

*In re APA Transport Corp. Consol. Litig.,*
    541 F.3d 233 (3d Cir. 2008).................................................................................................11, 12

*In re Philadelphia Newspapers, LLC,*
    433 B.R. 164 (Bankr. E.D. Penn. 2010) ...............................................................................15

*In re Storehouse, Inc.,*
    No. 06-11144-SSM, 2010 Bankr. LEXIS 3887 (Bankr. E.D. Va. Nov. 22, 2010)..........8, 9, 10

*Matthews v. Truland Group, Inc. (In re Truland Group, Inc.),*
    520 B.R. 197 (Bankr. E.D. Va. 2014)....................................................................................15

*Meson v. GATX Technology Services Corp.,*
    507 F.3d 803 (4th Cir. 2007) .........................................................................................7, 8, 9, 10

T<small>ABLE OF</small> A<small>UTHORITIES</small>

P<small>AGE</small>

*Pearson v. Component Tech. Corp.*,
  247 F.3d 471 (3d Cir. 2001)..................................................................................11, 12, 13

*Rifkin v. McDonnell Douglas Corp.*,
  78 F.3d 1277 (8th Cir. 1996) .........................................................................................6

*Sanchez v. AFA Foods, Inc. (In re AFA Inv., Inc.)*,
  No. 12-11127, 2012 Bankr. LEXIS 5764 (Bankr. D. Del. Dec. 14, 2012)...............4, 6, 13, 14

*Shane v. Fauver*,
  213 F.3d 113 (3d Cir. 2000)..........................................................................................15

*Smith v. Pallman*,
  420 Fed. App'x 208 (3d Cir. 2011)................................................................................14

*Williams v. Phillips Petroleum Co.*,
  23 F.3d 930 (5th Cir.), *cert. denied*, 513 U.S. 1019 (1994).......................................6

**S<small>TATUTES</small>**

11 U.S.C. § 503(b)(1)(A)(ii) ..............................................................................................15

29 U.S.C. § 2101(a)(2), (3) .................................................................................................5

29 U.S.C. § 2102(a) ............................................................................................................5

Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.*................. passim

**O<small>THER</small> A<small>UTHORITIES</small>**

20 C.F.R. § 639.3(a)(2) .....................................................................................................11

20 C.F.R. § 639.3(i)(3), (4) .................................................................................................6

20 C.F.R. § 639.3(i)(6).....................................................................................................7, 9

Fed. R. Bankr. P. 7012(b) ...................................................................................................1

Fed. R. Civ. P. 12(b)(6).........................................................................................1, 2, 5, 13

Defendants bring this Motion pursuant to Fed. R. Civ. P. 12(b)(6), which is made

applicable here by Fed. R. Bankr. P. 7012(b).  In support of the Motion, Defendants respectfully

represent and state as follows:

## I.  INTRODUCTION

This is a putative class action lawsuit alleging violations of the Worker Adjustment and

Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq*. (the "**WARN Act**").  The claim involves

employment terminations that Debtor/Defendant US Investigations Services, LLC ("**USIS**")

implemented after the U.S. Government unexpectedly ended a large contract for USIS to provide

background investigation services for federal security clearances.  The named Plaintiffs are a

Records Searcher II (Karaniewsky) and a Senior Investigator (Rodriguez), both of whom worked

for USIS from their homes and were discharged with less than 60 days' advance notice when the

U.S. Government ended the contract.

Pre-petition, Plaintiff Karaniewsky filed this same putative class action in the U.S.

District Court for the Western District of Pennsylvania.  In that case Karaniewsky, represented

by the same legal counsel, named only his actual employer, USIS, as the sole defendant.  In this

adversary action, in contrast, the named Plaintiffs have added as defendants three Altegrity

holding company entities:  Altegrity, Inc., Altegrity Acquisition Corp., and Altegrity Holding

Corp. (collectively the "**Altegrity Defendants**").

Defendants bring this Motion primarily because of two fundamental and fatal flaws in

Plaintiffs' claims that appear on the face of the Complaint.  First, Plaintiffs have not alleged (and

cannot allege) facts showing that the named Plaintiffs were employed at a "single site of

employment" (as defined in the WARN Act) at which 50 or more employees suffered

employment losses.  This failure requires dismissal of the entire action.  Second, Plaintiffs have

not alleged (and cannot allege) facts showing that any of the Altegrity Defendants were Plaintiffs' employer.  Because of this additional deficiency, the Court should dismiss the Altegrity Defendants from the case regardless of the Court's ruling on the "single site of employment" issue.  In addition, if the case survives in any form, Defendants ask the Court to dismiss Plaintiffs' alternative prayer that their claim, if successful, be awarded an administrative expense priority.  As a matter of law, pre-petition WARN Act claims arising out of terminations that occurred more than 60 days before the chapter 11 petitions were filed cannot be treated as expenses of administration.

## II.  FACTS ALLEGED BY PLAINTIFFS[2]

Plaintiffs Karaniewsky and Rodriguez were employed by Defendant USIS.  Complaint, ¶¶2, 9, 11.  USIS terminated their employments on or about September 30, 2014.  *Id*., ¶2.  USIS did not provide 60 days' notice of termination.  *Id*., ¶1.

Solely as background for the Court, USIS notes that it is uncontested that Plaintiffs' terminations occurred because the U.S. Government ended a large USIS contract to provide background investigations services.[3]  USIS alleges that it issued WARN Act notices within days after the U.S. Government gave USIS notice of this decision.  USIS alleges that the U.S. Government had regularly and consistently renewed contracts with USIS over many years, and indeed had recently given USIS written notice of its intention to renew this very contract.  And USIS alleges that it could not have reasonably foreseen that the U.S. Government would reverse course and end the contract.  If Plaintiffs' case survives this Motion, USIS will assert, among

---

[2]    As required by Rule 12(b)(6), this Motion assumes as true the specific facts alleged in the Complaint. Defendants assume these facts for purposes of this Motion only, and reserve the right to contest any and all of these facts for all other purposes.

[3]    The parties jointly recited this uncontested fact in their Rule 26(f) report in the pre-petition lawsuit.

other defenses, that these terminations were "ordered" by the federal Government, not USIS, within the meaning of the WARN Act, and that, if USIS had a WARN notice obligation, USIS complied with it by providing shortened WARN notice, which is allowed in the event of business circumstances that are not reasonably foreseeable.  USIS does not rely on those defenses for purposes of this Motion, however.  This Motion is based solely on the specific facts that are alleged in, or omitted from, the Complaint.

As explained below, the WARN Act does not require notice to an employee unless, at a minimum, the employer causes at least 50 employment losses to occur at the employee's single site of employment.  The Complaint fails to allege that either named Plaintiff was employed at a single site of employment at which 50 or more employment losses occurred.  The Complaint states that USIS had facilities located at Grove City, Pennsylvania and Falls Church, Virginia, defined in the Complaint as the "Facilities" (Complaint, ¶9), and alleges that there were at least 50 employment losses at those "Facilities" (*Id.*, ¶40).  Plaintiffs do not allege, however, that either Plaintiff physically worked at either of the "Facilities."  Rather, Plaintiffs allege that Karaniewsky and Rodriguez were a Record Searcher II and Senior Investigator, respectively, who worked from their homes to perform investigations.  *Id.*, ¶¶9, 11.  The only allegations that seek to tie the named Plaintiffs to the "Facilities" are statements, alleged on information and belief, that "the assignments [he/she] worked on originated from, and the reports [he/she] filed went to," the two "Facilities."  *Id.*, ¶¶10-11.[4]

---

[4]    Paragraph 22 of the Complaint alleges that "Plaintiff and the other similarly situated persons were employees of Defendants who worked at, received assignments from, *or* reported to" the Facilities (emphasis added).  Similarly, paragraph 29 of the Complaint alleges that Plaintiffs "worked at *or* reported to" the Facilities (emphasis added).  Given Plaintiffs' use of the disjunctive term "or" in these allegations, these statements do not allege that either named Plaintiff physically worked at or physically reported to either of the two "Facilities."  Further, Defendants believe Plaintiffs cannot plead such an allegation consistent with their knowledge of the actual facts.

The Complaint is similarly devoid of facts showing that any one of the Altegrity Defendants was the "employer" of either Plaintiff. Plaintiffs allege that the Altegrity Defendants were the direct or indirect owners of the equity in USIS, and shared common directors with USIS. *Id.*, ¶¶17, 18, 20. Plaintiffs also allege, in a conclusory fashion and on information and belief, that the Altegrity Defendants and USIS "operated as a single employer and made the decisions that gave rise to the terminations of the Plaintiffs . . . ." *Id.*, ¶19. The Complaint is devoid of a single specific factual allegation, however, to support this claim.

In Section D of the Prayer for Relief, the Complaint seeks "in the alternative a first priority administrative expense claim." On the facts alleged, however, any claim that exists arose entirely pre-petition. Plaintiffs allege that USIS terminated their employment, and the employment of the putative class members, on or about September 30, 2014. *Id.*, ¶31. Plaintiffs allege that they and the putative class members were entitled to 60 days' notice. *Id.* This alleged 60-day notice period expired no later than on or about November 29, 2014, 60 days after September 30, 2014. As Plaintiffs admit, Defendants did not file their petitions for relief under chapter 11 until February 8, 2015, more than two months after that 60-day back pay period ended. *Id.*, ¶21.

## III. DISCUSSION

### A.    Jurisdiction

This Court has jurisdiction to grant this Motion. The Court has the power to enter an order on a motion to dismiss regardless of whether the matter is core or non-core and regardless of whether the Court has authority to enter a final order. *Sanchez v. AFA Foods, Inc. (In re AFA Inv., Inc.)*, No. 12-11127, 2012 Bankr. LEXIS 5764, at *4 (Bankr. D. Del. Dec. 14, 2012) (citations omitted).

**B.      The *Iqbal/Twombly* Standard for This 12(b)(6) Motion**

For the Complaint to survive this Rule 12(b)(6) Motion, the claims must meet the

pleading standard established by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.

Ct. 1937, 173 L. Ed. 2d 868 (2009).  These cases shifted the federal pleading standard from

notice pleading to a heightened standard.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d

Cir. 2009).  A complaint now must contain "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S.

at 570).  A claim is facially plausible "when the plaintiff pleads *factual content* that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* (emphasis added).  "[A] pleading offering only labels and conclusions or a formulaic

recitation of the elements of a cause of action will not do."  *Fowler*, 578 F.3d at 210 (*quoting*

*Twombly*, 550 U.S. at 555).

The Third Circuit teaches that the Court should conduct a two-part analysis.  "First, the

factual and legal elements of a claim should be separated," and the Court "must accept all of the

complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Fowler*, 578

F.3d at 210-11.  Second, the Court "must then determine whether the facts alleged in the

complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.*, at 211.

**C.      The Complaint Fails to Allege 50 Employment Losses at a Relevant Single Site of Employment**

The WARN Act requires notice only of "plant closings" and "mass layoffs."  29 U.S.C. §

2102(a).  For either a "plant closing" or a "mass layoff" to occur, at least 50 employees must

have suffered an "employment loss" at a given "single site of employment."  29 U.S.C. §

2101(a)(2), (3).[5]  "Single site of employment" is a geographic concept.  As a general rule,

"geographically separate facilities are separate sites."  *Rifkin v. McDonnell Douglas Corp.*, 78

F.3d 1277, 1280 (8th Cir. 1996).  Even if two locations are close to each other they are still two

separate sites of employment unless they are "used for the same purpose *and* share the same staff

and equipment."  20 C.F.R. § 639.3(i)(3), (4) (emphasis added).  For example, two assembly

plants across town from each other that are commonly managed are considered separate sites "if

they employ different workers."  *Id*.  Two locations do not "share the same staff," so as to

potentially permit aggregation, unless the employer regularly shifts or rotates the same

employees between the locations.  *Rifkin*, 78 F.3d at 1280-81; *Frymire v. Ampex Corp.*, 61 F.3d

757, 764-67 (10th Cir. 1995).

Further, even if WARN notice is triggered at one single site of employment, that does not

grant a right to WARN notice to all employees affected by the same event.  To be eligible to

receive WARN notice, an employee must be located at a single site of employment at which

WARN has been triggered.  *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 934-35 (5th Cir.),

*cert. denied*, 513 U.S. 1019 (1994); *Bailey v. Jamesway Corp. (In re Jamesway Corp.)*, No. 95 B

44821, 1997 Bankr. LEXIS 825, at *49-53 (Bankr. S.D.N.Y. June 11, 1997).

For these reasons, Plaintiffs cannot state a claim for relief without alleging, among other

things, that they were employed at a single site of employment at which 50 employment losses

occurred.  *See Sanchez,* 2012 Bankr. LEXIS 5764, at *16-18 (granting motion to dismiss WARN

complaint because it was unclear from the face of the complaint whether 50 employment losses

had occurred at any one location).

---

[5]    Additional requirements also apply.

Here, Plaintiffs admit that they worked from their homes, and they do not allege (and cannot truthfully allege) that 50 employment losses occurred at their homes.  Rather, Plaintiffs' theory is that (a) WARN was triggered at one of USIS's two "Facilities" located in Grove City, Pennsylvania and Falls Church, Virginia – nearly 300 miles from each other, and (b) Plaintiffs are entitled to be treated as if they had physically worked at those "Facilities" because (Plaintiffs allege on information and belief) their assignments originated from, and their reports went to, those Facilities.  Complaint, ¶¶10, 11.  To make this argument, Plaintiffs will claim they are covered by the WARN Act regulation that provides special single site of employment rules for certain mobile employees:

> For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (*e.g.*, railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

20 C.F.R. § 639.3(i)(6).  Plaintiffs' effort to rely on this "mobile employees" regulation fails for two independent reasons.

First, Plaintiffs have not alleged facts that would permit them to invoke the "mobile employees" regulation.  This regulation applies "only to truly mobile workers without a regular, fixed place of work."  *Meson v. GATX Technology Services Corp.*, 507 F.3d 803, 809 (4th Cir. 2007).  It does not apply to these Plaintiffs, who prepared and filed investigation reports at their home offices based on information they obtained by traveling from their homes.  Complaint, ¶¶9-11 (Plaintiffs worked from home, performed field investigations and filed reports).  As more fully explained in *Meson*:

> Although subpart (6) could be read literally to cover almost any employee who leaves her office, we believe it was intended to apply only to truly mobile workers without a regular, fixed place of work.  A close scrutiny of the provision's language supports this conclusion.  The terms "travel . . . from point to point,"

"outstationed," and "home base," all connote the absence of a fixed workplace. *See Ciarlante*, 143 F.3d at 146 (defining "home base" as "a site that the employee visits during the course of a typical business trip"); *Bader*, 503 F.3d 813, 2007 U.S. App. LEXIS 21645, at *13 ("The term [outstationed] most logically connotes a situation where employees live for a short period of time at a certain site, departing for home when the work is done."). The examples provided in subpart (6) also support this view. Bus drivers and railroad workers have no fixed workplace or office. Indeed, their jobs are characterized by travel and mobility. Although the provision includes "salespersons" as examples, the context suggests that this reference is to traveling salespersons who work primarily out of their homes or cars, rather than those who work out of fixed offices.

The commentary to the WARN Act regulations confirms our interpretation. The Department of Labor explains that subpart (6) was included in the definition of "'single site of employment' . . . [i]n order to cover [the situation of railroad industry maintenance crews who have no home base] and the situation of outstationed workers and traveling workers who report to *but do not work out of a particular office. . . ."* Commentary to Worker Adjustment and Retraining Notification Act, 54 Fed. Reg. 16042, 16051 (April 20, 1989) (emphasis added). The commentary goes on to refer to subpart (6) as "that part of the regulation relating to *mobile workers*." *Id*. (emphasis added).

*Meson*, 507 F.3d at 809-10.

The case of *In re Storehouse, Inc*., No. 06-11144-SSM, 2010 Bankr. LEXIS 3887 (Bankr. E.D. Va. Nov. 22, 2010), followed *Meson* and is on point. The *Storehouse* court applied the *Meson* analysis to facts materially identical to those of the case at bar, and the court rejected the employee's claim. The claimant in that case, Teyssier, had been employed as a logistics manager. He "spent much of his time traveling to the distribution depots he oversaw," but also spent time in a small back office doing work that was "administrative — he would answer e-mails, return phone calls, and touch base with district managers about any delivery problems they were having." *Storehouse*, 2010 Bankr. LEXIS 3887, at *3-5. The *Storehouse* court held that Teyssier did not fit within the "mobile employees" regulation and, as such, if he had worked from home, his home would have been his single site of employment:

Even if Mr. Teyssier had chosen to work from home, instead of using the back office in Richmond, he would still have had a single site of employment. His residence in Richmond would have been his single site of employment, since it

01:16874036.1

would have been his fixed workspace when he was not traveling for work. Therefore, even treating Mr. Teyssier as a true telecommuter, he still worked at a single site of employment with fewer than 50 employees for purposes of the WARN Act. *The alternative to finding that a telecommuter's single site of employment is his or her home would be to find that the single site of employment is determined by where he or she receives work from and reports to. Such an interpretation would not make sense within the broader outlines of the WARN Act.* As the Fourth Circuit stressed in *Meson*, a major objective of the Act is to warn communities in addition to individual workers of the impending economic disruption of a major layoff or plant closing. *Meson*, 507 F.3d at 811. The Court further highlighted that Congress's decision to target only those layoffs affecting 50 or more people in a single locale is significant. *Id.* It supports the conclusion that 20 C.F.R. § 639.3(i)(6) does not apply when fewer than 50 community residents have lost their job as a result of a single layoff. *Id.* In this case Mr. Teyssier was not a mobile worker and therefore he had a single site of employment. The layoff at his site of employment was fewer than 50 people and therefore he does not qualify for protection under the WARN Act.

*Id.,* at *11-13 (emphasis added, footnote omitted).

*Meson* and *Storehouse* make clear that the mobile worker regulation should not be applied to employees who work out of their homes just because a significant part of their job involves work done outside of the home. Rather, the mobile worker regulation should be limited, pursuant to its terms, to truly mobile workers such as bus drivers and field salespeople. In the case at bar, Plaintiffs were part of a large USIS investigations workforce made up of employees who worked from home offices strategically located in geographically distinct areas throughout the country. Under Plaintiffs' apparent view of the law, the five such USIS employees who were stationed to work from their homes in Alaska (for example) would all somehow have their primary work sites in Pennsylvania or Virginia, and would have a right to receive WARN Act notice even though USIS discharged a total of only five employees in the entire state. As discussed in *Meson* and *Storehouse*, such a misconstruction of the law would be entirely inconsistent with the purpose and intent of Congress to require WARN Act notice only for large layoffs that have a significant and concentrated impact at a single location.

In response to this analysis from *Meson* and *Storehouse*, Plaintiffs will seek to rely on *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139 (3d Cir. 1998), but this reliance will be misplaced.  There was no question raised or discussed in *Ciarlante* about whether the "mobile employees" regulation applied, because *Ciarlante* involved traveling salespeople, and "salespeople" are expressly covered by the "mobile employees" regulation.  *See Ciarlante,* 143 F.3d at 145 (noting without discussion that the "mobile employee" regulation was "[t]he regulation applicable to this case"); *Ciarlante v. Brown & Williamson Tobacco Corp.*, No. 95-4646, 1996 U.S. Dist. LEXIS 16741, at *6 (E.D. Penn. Nov. 6, 1996) (earlier lower court decision in same case, quoting the "mobile employees" regulation and emphasizing through italics that the Department of Labor had specifically called out "salespersons" for coverage by the regulation).

The "mobile employees" regulation does not apply to this case.

Second, even if the "mobile employees" regulation applied here (which it does not), Plaintiffs have not alleged actual facts, as opposed to legal conclusions, supporting Plaintiffs' argument that USIS's two physical "Facilities" in Pennsylvania and Virginia were the locations from which Plaintiffs received direction or to which they reported.  The test under the "mobile employees" regulation is not where top managerial authority was located, or where the information Plaintiffs prepared eventually ended up, as Plaintiffs seem to assume.  Rather, the test turns on where the person worked who primarily gave a Plaintiff his or her "day-to-day" instructions, and where the person worked to whom a Plaintiff primarily reported.  *Ciarlante*, 143 F.3d at 147-49.  Plaintiffs' Complaint does not address these issues, however.  It instead contains merely conclusory allegations that work assignments "originated from" the "Facilities" and that reports Plaintiffs prepared "went to" the "Facilities."  Complaint, ¶¶10-11.  This

apparently was Plaintiffs' effort to mimic the regulation.  But these are conclusions, not facts.

Such formulaic allegations should be ignored when determining whether the Complaint satisfies

the *Iqbal/Twombly* pleading standard.  *Fowler*, 578 F.3d at 210-11; *see also Ciarlante,* 143 F.3d

at 147-49 (holding that, depending on the actual facts, the appropriate single site of employment

for traveling salespeople covered by the "mobile employees" regulation might be the locations

either of the employee's direct supervisors or of supervisors at the employer's central office).

The Complaint should be dismissed for its failure to allege facts showing that either of

the Plaintiffs was located at a single site of employment at which at least 50 employment losses

occurred.

> **D.    The Complaint Fails to Allege Facts (Not Legal Conclusions) Showing That Any Altegrity Defendant Is a "Single Employer" With USIS**

Plaintiffs' allegation that the three Altegrity Defendants were all part of a "single

employer" with USIS is also patently deficient.

The WARN Act regulations provide that subsidiaries that are wholly or partially owned

by a parent company are treated either as separate employers or as a part of the parent company

depending on "the degree of their independence from the parent."  20 C.F.R. § 639.3(a)(2).

Applying this regulation, the Third Circuit has adopted a five-factor test for determining whether

related companies have WARN liability on "single employer" grounds.  The five factors are:

"(1) common ownership, (2) common directors and/or officers, (3) *de facto* exercise of control,

(4) unity of personnel policies emanating from a common source, and (5) dependency of

operations."  *In re APA Transport Corp. Consol. Litig*., 541 F.3d 233, 243 (3d Cir. 2008) (*citing

Pearson v. Component Tech. Corp*., 247 F.3d 471, 487-90 (3d Cir. 2001)).  These factors are not

weighted equally.  For example, "the first and second factors, common ownership and common

directors and/or officers, are not sufficient to establish that two entities are a 'single employer.'"

*Id.* (*citing Pearson*, 247 F.3d at 494 ("ownership – and even ownership coupled with common management – is not a sufficient basis for liability")).

Often, the "*de facto* exercise of control" factor is considered to be primary.  The core of this factor is whether the alleged "employer" was "the decision maker responsible for the employment practice giving rise to the litigation." *Id.* at 503-04.

In the Complaint, Plaintiffs allege the existence of the first two factors, common ownership and common directors, in a merely conclusory fashion.  Complaint, ¶¶17, 18, 20. Judge Sontchi recently ruled that similarly sparse allegations of the first two single-employer factors did not meet the *Iqbal/Twombly* pleading standard.  *Czarniak v. Entertainment Publications, LLC (In re Entertainment Publications, LLC)*, No. 13-50912, 2014 Bankr. LEXIS 1556, at *11-19 (Bank. D. Del. Mar. 12, 2014) (allegations that MH Private Equity was the "ultimate parent" and/or the "majority or sole shareholder and owner" of the employer were insufficient to plead common ownership; allegations that MH Private Equity "shared common officers and directors" with the employer, and also "provided the Defendants subsidiaries with managerial, financial, operational and administrative support" were insufficient to plead common directors and/or officers).  And even if these first two factors were adequately pled (they are not), as already noted, the presence of those factors alone would not support a single employer claim.

The Complaint includes no allegations at all related to the fourth or fifth factors.

This leaves the entire weight of Plaintiffs' single-employer allegations on the third factor, that is, the allegation that each Altegrity Defendant exercised *de facto* control over USIS's decision to terminate Plaintiffs' employment.  But instead of pleading facts on that score, Plaintiffs pled only the legal conclusion of *de facto* control:

> Upon information and belief, [the Altegrity Defendants] and USIS operated as a
> single employer and made the decisions that gave rise to the terminations of the
> Plaintiffs and other similarly-situated former employees . . . .

Complaint, ¶19. This bare allegation is insufficient to state a single employer claim. The "letter

and spirit of *Twombly* and *Iqbal*" require that a complaint will not suffice if it tenders "'naked

assertion[s]' devoid of 'further factual enhancement.' *Iqbal*, 556 U.S. at 677 (*quoting Twombly*,

550 U.S. at 557)." *Sanchez*, 2012 Bankr. LEXIS 5764, at *11-12.

Two recent decisions by other judges of this Court have granted Rule 12(b)(6) motions to

dismiss materially identical single employer allegations. In the case of *Sanchez v. AFA Foods,

Inc. (In re AFA Inv., Inc.)*, No. 12-11127, 2012 Bankr. LEXIS 5764 (Bankr. D. Del. Dec. 14,

2012), the plaintiff pled:

> All of the Defendants exercised *de facto* control over the labor practices
> governing the Plaintiff and Class Members, including the decision to order the
> mass layoff or plant closing at the Facilities.

*Id.*, at *9. Judge Walrath dismissed the complaint, holding that these allegations were "bald

assertions of the corresponding legal factors and do not provide a basis from which the Court can

infer the high degree of integration required under *Pearson*." *Id.*, at *15. Similarly, in the case

of *Czarniak v. Entertainment Publications, LLC (In re Entertainment Publications, LLC)*, No.

13-50912, 2014 Bankr. LEXIS 1556 (Bankr. D. Del. Mar. 12, 2014), the plaintiff pled:

> All of the Defendants exercised *de facto* control over the labor practices
> governing the Plaintiff and Class Members, including the decision to order the
> mass layoff closing at the Facilities.

*Id.*, at *19. That complaint further alleged that one of the defendants maintained centralized

control over payroll and personnel policies, made the decision that triggered the mass layoffs,

and provided managerial, financial and administrative support on which the employer

substantially depended. *Id.*, at *19-20. Judge Sontchi dismissed the complaint, ruling the

allegations failed to allege plausible facts that could lead to a conclusion that any of the

defendants exercise *de facto* control. *Id.*, at *26. In doing so, the Court noted the complaint

lacked the kind of detail necessary to evaluate the allegations, such as detailed allegations as to

how the defendants were responsible for making the decision to terminate employees. *Id.*;

*accord Azzata v. American Bedding Industries, Inc.*, 432 B.R. 115, 123-25 (Bankr. D. Del. 2010)

(Shannon, J.); *cf. Hampton v. Navigation Capital Partners, Inc.*, No. 13-747-LPS, 2014 U.S.

Dist. LEXIS 114930, at *11-13 (D. Del. Aug. 19, 2014) (declining to dismiss single-employer

WARN Act complaint because of specific factual allegations that supported a plausible inference

of *de facto* exercise of control).

It is not entirely clear why Plaintiffs would, in this case, present allegations so lacking in

specifics when strikingly similar pleadings led to dismissals in *Sanchez* and *Czarniak*. (Plaintiffs

here are represented by Outten & Golden, the same firm that represented the plaintiffs in *Sanchez*

and *Czarniak*.) Defendants surmise, however (and the Court should infer) that the sparsity of the

pleading is a function of Plaintiffs having no facts to support their single employer claim.

(Defendants believe no such facts exist.) And if Plaintiffs say they need discovery on this point,

the answer, as Judge Walrath held in *Sanchez*, is that discovery would be improper:

> The law is clear that Sanchez should not be permitted to take discovery until she
> properly pleads a plausible cause of action. *See, e.g., Iqbal*, 556 U.S. at 678-79
> (holding that Rule 8 "does not unlock the doors of discovery for a plaintiff armed
> with nothing more than conclusions"); *Smith v. Pallman*, 420 Fed. App'x 208,
> 214 (3d Cir. 2011) ("[Plaintiff]'s contention that the District Court should have
> permitted her to engage in discovery fails. Discovery is not required prior to
> dismissal."); *S. Jersey Gas Co. v. Mueller Co., Ltd.*, Civil No. 09-4194, 2011 U.S.
> Dist. LEXIS 133829, 2011 WL 5873028, at *7 (D. N.J. Nov. 18, 2011) (holding
> that the "law is now settled that plaintiff cannot take discovery until [she]
> properly pleads a plausible cause of action").

*Sanchez*, 2012 Bankr. LEXIS 5764, at *12.

For these reasons, Plaintiffs' single-employer claims against the Altegrity Defendants

should be dismissed.

**E.     The Facts Alleged in the Complaint Conclusively Rebut Plaintiffs' Prayer for Administrative Expense Priority**

Plaintiffs pray for "a first priority administrative expense claim against Defendants pursuant to 11 U.S.C. § 503(b)(1)(A)(ii)."  Complaint, Prayer for Relief, D.  But based on the plain and straightforward language of that Bankruptcy Code section, wages and benefits cannot qualify for administrative expense priority unless, among other things, they are awarded as back pay attributable to a period of time occurring *after* commencement of the debtor's bankruptcy case.  *Matthews v. Truland Group, Inc. (In re Truland Group, Inc.)*, 520 B.R. 197, 203-14 (Bankr. E.D. Va. 2014); *In re Philadelphia Newspapers, LLC*, 433 B.R. 164, 175 (Bankr. E.D. Penn. 2010).  Here, based on the facts pled by Plaintiffs, the alleged 60-day back-pay period ended before the chapter 11 petitions were filed.  As such, the claim for administrative priority should be dismissed.

**F.     Dismissal Should Be Entered Without Leave to Amend**

Normally, when granting a motion to dismiss at the outset of a case, leave will be freely granted to amend the complaint.  *Shane v. Fauver*, 213 F.3d 113, 115-16 (3d Cir. 2000).  A futility exception applies, however, if the complaint, as amended, would fail to state a claim upon which relief can be granted.  *Id*.  Unless Plaintiffs demonstrate to the Court that they have facts permitting them to frame a proper pleading (and Defendants believe they do not), the dismissal should be granted without leave to amend, on the basis of futility.

## IV.  CONCLUSION

Because Plaintiffs have not alleged, and cannot allege, facts showing that the named Plaintiffs were employed at a "single site of employment" (as defined in the WARN Act) at which 50 or more employees suffered employment losses, this entire action should be dismissed without leave to replead.  In the alternative, the Altegrity Defendants should be dismissed from

01:16874036.1

the case, without leave to replead, because Plaintiffs have not alleged, and cannot allege, facts showing that the Altegrity Defendants were Plaintiffs' employer.  Finally, if this case survives in any form, the Court should dismiss Plaintiffs' prayer to be awarded an administrative expense priority because the Complaint shows that the claims asserted, if valid, are for a back-pay recovery period that ended before Debtors filed the chapter 11 petitions.

01:16874036.1

Dated:   March 27, 2015
         Wilmington, Delaware

*/s/ Joseph M. Barry*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Edmon L. Morton (No. 3856)
Joseph M. Barry (No. 4221)
Ryan M. Bartley (No. 4985)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253
Email: emorton@ycst.com
        jbarry@ycst.com
        rbartley@ycst.com

-and-

**LITTLER MENDELSON, P.C.**
Daniel L. Thieme, *Pro Hac Vice*
Deidra A. Nguyen, *Pro Hac Vice*
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101
Tel:    206-623-3300
Fax:    206-447-6965
Email: dthieme@littler.com
        DANguyen@littler.com

Rod Fliegel, *Pro Hac Vice*
650 California Street, 20th Floor
San Francisco, California 94108
Tel:    415-433-1940
Fax:    415-399-8490
Email: rfliegel@littler.com

-and-

**DEBEVOISE & PLIMPTON LLP**
John S. Kiernan, *Pro Hac Vice*
M. Natasha Labovitz, *Pro Hac Vice*
919 Third Avenue
New York, New York 10022
Tel:    (212) 909-6000
Fax:    (212) 909-6836
Email:  jskiernan@debevoise.com
        nlabovitz@debevoise.com

*Counsel for Defendants*

Firmwide:132377323.4 065061.1025

01:16874036.1

17