## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ALTEGRITY, INC., *et al.*,[1]<br><br>Debtors.<br>━━━━━━━━━━━━━━━━━━━━━━━━━<br>THOMAS KARANIEWSKY and ANGELA RODRIGUEZ on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>ALTEGRITY, INC., ALTEGRITY ACQUISITION CORP., ALTEGRITY HOLDING CORP., and US INVESTIGATIONS SERVICES, LLC,<br><br>Defendants. | Chapter 11<br><br>Case No. 15-10226 (LSS)<br><br>Jointly Administered<br><br>Adv. Proc. No. 15-50204 (LSS) |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT

The above-captioned defendants (collectively, "**Defendants**") file this reply brief (the

"**Reply**") in further support of Defendants' Motion to Dismiss Complaint [Dkt. No. 17] (the

"**Motion**"), and in response to Plaintiffs' Memorandum of Law in Opposition [Dkt. No. 21] (the

"**Opposition**").

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Altegrity, Inc. (9985); Albatross Holding Company, LLC (2688); Albatross Marketing and Trading, LLC (8643); Altegrity Acquisition Corp. (1480); Altegrity Holding Corp. (1481); Altegrity Risk International LLC (6350); Altegrity Security Consulting, Inc. (5452); CVM Solutions, LLC (9526); D, D & C, Inc. (9552); Engenium Corporation (2269); FDC Acquisition, Inc. (2387); HireRight Records Services, Inc. (1944); HireRight Solutions, Inc. (8954); HireRight Technologies Group, Inc. (1660); HireRight, Inc. (5016); John D. Cohen, Inc. (1738); KCMS, Inc. (0085); KIA Holding, LLC (1333); Kroll Associates, Inc. (6880); Kroll Background America, Inc. (4830); Kroll Crisis Management Group, Inc. (3811); Kroll Cyber Security, Inc. (2393); Kroll Factual Data, Inc. (9911); Kroll Holdings, Inc. (4648); Kroll Inc. (1019); Kroll Information Assurance, Inc. (2283); Kroll Information Services, Inc. (2381); Kroll International, Inc. (1243); Kroll Ontrack Inc. (1650); Kroll Recovery LLC (7082); Kroll Security Group, Inc. (5514); National Diagnostics, Inc. (7132); Ontrack Data Recovery, Inc. (3148); Personnel Records International, LLC (0716); The Official Information Company (1805); US Investigations Services, LLC (9260); USIS International, Inc. (3617); and USIS Worldwide, Inc. (4258).  The location of the Debtors' corporate headquarters is 7799 Leesburg Pike, Suite 1100 North, Falls Church, VA 22043.

TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. DISCUSSION ................................................................................................... 2

    A.    The *Iqbal/Twombly* Standard for This 12(b)(6) Motion ........................................ 2

    B.    The Complaint Fails to Allege 50 Employment Losses at a Relevant
        Single Site of Employment .................................................................................. 3

        1.    The Facts Pled in the Complaint Show That the Mobile Employees
                Regulation Does Not Apply to the Named Plaintiffs ................................. 4

        2.    Even if the Mobile Employees Regulation Applied Here, The Facts
                Pled Do Not State a Claim Under the *Iqbal/Twombly* Standard ............... 9

    C.    The Complaint Fails to Allege Facts (Not Legal Conclusions) Showing
        That Any Altegrity Defendant Is a "Single Employer" With USIS ................... 10

    D.    The Facts of Which Plaintiffs Now Seek Judicial Notice Do Not Permit
        Them to Cure Their Defective Pleading With Regard to the Single-
        Employer Claim .................................................................................................. 10

        1.    The Five-Factor Test ................................................................................. 12

        2.    Factors 1 and 2 - Common Ownership and Common Directors
                And/Or Officers ........................................................................................ 12

        3.    Factor 3 - *De Facto* Control ..................................................................... 12

        4.    Factor 4 - Unity of Personnel Policies ..................................................... 14

        5.    Factor 5 – Mutual Dependency of Operations ......................................... 15

        6.    Plaintiffs Have Not Shown a Facially Plausible Single-Employer
                Claim Under the Five-Factor Test ............................................................ 15

    E.    Plaintiffs Concede That Plaintiffs' Prayer for Administrative Expense
        Priority Should Be Dismissed ............................................................................. 17

    F.    Plaintiffs' Alternative Request to Obtain Discovery By Converting This
        Rule 12(b) Motion to One for Summary Judgment Should Be Denied ............. 17

III. CONCLUSION ................................................................................................. 19

TABLE OF AUTHORITIES

PAGE

## CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................................. passim

*Bader v. N. Line Layers, Inc.*,
    503 F.3d 813 (9th Cir. 2007) .........................................................................................7, 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................................. passim

*Certain Underwriters at Interest at Lloyd's of London v. UPS of Am., Inc.*,
    762 F.3d 332 (3d Cir. 2014) ...........................................................................................3

*Ciarlante v. Brown & Williamson Tobacco Corp.*,
    143 F.3d 139 (3d Cir. 1998) ....................................................................................6, 7, 8

*Covington v. Int'l Ass'n of Approved Basketball Officials*,
    710 F.3d 114 (3d Cir. 2013) ..........................................................................................2, 3

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ..........................................................................................2, 3

*Gray v. Oracle Corp.* (*Gray I*),
    2005 WL 3132344 (D. Utah Nov. 22, 2005) ......................................................................8, 9

*Gray v. Oracle Corp.* (*Gray II*),
    2007 U.S. Dist. LEXIS 83202 (D. Utah Nov. 8, 2007) ...........................................................9

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*,
    615 F.3d 159 (3d Cir. 2010) ...........................................................................................11

*Hampton v. Navigation Capital Partners, Inc.*,
    No. 13-747-LPS, 2014 U.S. Dist. LEXIS 114930 (D. Del. Aug. 19, 2014) .....................12, 16

*In re APA Transport Corp. Consol. Litig.*,
    541 F.3d 233 (3d Cir. 2008) ........................................................................................ passim

*Kephart v. Data Sys. Int'l, Inc.*,
    243 F. Supp. 2d 1205 (D. Kan. 2003) .............................................................................8, 9

*Meson v. GATX Technology Services Corp.*,
    507 F.3d 803 (4th Cir. 2007) .....................................................................................4, 5, 6, 7

ii.

TABLE OF AUTHORITIES

PAGE

*Pearson v. Component Tech. Corp.*,
   247 F.3d 471 (3d Cir. 2001)..................................................................................11, 12, 14, 15

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993)...............................................................................................18

*Ranch Realty, Inc. v. DC Ranch Realty, LLC*,
   614 F. Supp. 2d 983 (D. Ariz. 2007) ...................................................................................18

*Wiltz v. M/G Transp. Servs., Inc.*,
   128 F.3d 957 (6th Cir. 1997) ...............................................................................................8

**STATUTES**

11 U.S.C. § 503(b)(1)(A)(ii) ....................................................................................................17

WARN Act............................................................................................................... passim

**OTHER AUTHORITIES**

20 C.F.R. § 639.3(i)(6).........................................................................................................4, 9

Bryan A. Garner, A Dictionary of Modern Legal Usage (Oxford University Press 2d Ed.
   2001) .....................................................................................................................................6

Rule 11 ......................................................................................................................................5

Rule 12(b) ................................................................................................................16, 17, 18

Rule 56(d) ...............................................................................................................................17

# I.  INTRODUCTION

This case should be dismissed in its entirety due to Plaintiffs' failure to adequately plead that the named Plaintiffs were employed at a "single site of employment" (as defined in the WARN Act) at which 50 or more employees suffered employment losses.  As Defendants explain further below, the Plaintiffs are home-based employees who have not alleged, and cannot allege, facts permitting them to rely on the "mobile employees" regulation to define their single site of employment.  Even if they could rely on that regulation, Plaintiffs have not alleged facts, as opposed to conclusions, showing that their employment should be attributed to a single site of employment at which 50 or more employees worked.

In the alternative, the Altegrity Defendants should be dismissed from the case because Plaintiffs have not alleged, and cannot allege, facts showing that the Altegrity Defendants were a "single employer" with Plaintiffs' actual employer, USIS.  Plaintiffs have not even tried to show that their current Complaint, standing alone, passes muster under *Iqbal* and *Twombly*.  That Complaint should be dismissed.  Moreover, the dismissal should be without leave to replead.  As shown below, a careful review of the Third Circuit's application of the five-factor single-employer test proves that the new facts on which Plaintiffs would rely are equally insufficient to allow the Court to draw the reasonable inference that the Altegrity Defendants are liable for the WARN Act claims asserted by former employees of USIS.

Finally, if this case survives in any form, the Court should dismiss Plaintiffs' prayer to be awarded an administrative expense priority, as Plaintiffs now concede.

## II.  DISCUSSION

### A.        The *Iqbal/Twombly* Standard for This 12(b)(6) Motion

Plaintiffs seek to avoid the heightened pleading standard required by *Iqbal* and *Twombly*[2]

with straw man arguments.  They point out that they need not prove it is probable they will

prevail; that they need not set out all facts in detail; and that they are not required to establish

each element of a *prima facie* case at the pleading stage.  Plaintiffs' Opposition [Dkt. No. 21],

pp. 6-7 (ECF pp. 12-13).  Defendants made no such arguments.  Defendants instead rely on the

core requirement of *Iqbal* and *Twombly* that a plaintiff must "plead[] *factual content*" rather than

merely provide "labels and conclusions or a formulaic recitation of the elements of a cause of

action."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*quoting Twombly*, 550

U.S. at 555) (emphasis added); *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).

This requirement is well illustrated by the recent Third Circuit case on which Plaintiffs

rely, *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114 (3d Cir. 2013).  In

*Covington*, a female basketball official asserted sex discrimination claims against various entities

associated with a state high school athletics program, based on the fact that she had not been

assigned to officiate at boys' games.  *Covington*, 710 F.3d at 117.  The Third Circuit scrutinized

the pleading for facts sufficient to allege an adequate nexus of each defendant to the alleged

discrimination.  With regard to most of the defendants, the Third Circuit found the plaintiff's

conclusory factual allegations were insufficient at the pleading stage, and affirmed the trial

court's dismissal of those defendants from the case.  *Id.* at 119-20.  The Third Circuit found that

the pleading was adequate against one of the entity defendants, the NJSIAA, but only because

the complaint included factual allegations regarding its control of the tournaments, assignment of

---

[2]        *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

officials to games, payments to officials, payments for officials' liability insurance, training of officials, and other specifically-alleged conduct that, in total, the court found was sufficient to make the claimed existence of an employment relationship plausible at the pleading stage. *Id.* at 119. The Third Circuit in *Covington* thus applied the same analytical approach and pleading standard that it had applied in an earlier case relied upon by Defendants, *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). In *Fowler*, the Third Circuit noted that avoiding dismissal at the pleading stage requires that the complaint "show" (not merely "allege") entitlement to relief, based on facts. *Fowler*, 578 F.3d at 211. *Fowler* found the complaint before it passed muster, but only because the plaintiff had "nudged her claims . . . across the line from conceivable to plausible" by "plead[ing] how, when, and where" the plaintiff experienced discrimination. *Id.* at 210-12.

Thus the Third Circuit cases, as exemplified by *Covington* and *Fowler*, fully support Defendants' Motion. A court must "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Certain Underwriters at Interest at Lloyd's of London v. UPS of Am., Inc.*, 762 F.3d 332, 334 (3d Cir. 2014) (citation omitted). Disregarding conclusory allegations, any remaining "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington*, 710 F.3d at 118 (quoting *Twombly*). Here, the non-conclusory facts alleged are not "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211.

**B.    The Complaint Fails to Allege 50 Employment Losses at a Relevant Single Site of Employment**

Plaintiffs' attempt to plead that they worked at a "single site of employment" at which 50 or more employment losses occurred fails. Plaintiffs cannot evade the uncontested fact that they worked from their homes, and they can show neither a legal nor a factual basis for a plausible

claim that their "single site of employment" was a distant company facility at which they did not work.

### 1.    The Facts Pled in the Complaint Show That the Mobile Employees Regulation Does Not Apply to the Named Plaintiffs.

As Defendants anticipated, Plaintiffs contend that the mobile employees regulation[3] applies to them.[4]  But to the contrary, the Fourth Circuit has explained that the mobile employees regulation applies "only to truly mobile workers without a regular, fixed place of work."  *Meson v. GATX Technology Services Corp.*, 507 F.3d 803, 809 (4th Cir. 2007).  Plaintiffs' attempts to avoid the logic of *Meson* are unavailing.

First, Plaintiffs argue that they "do not allege that they prepared and filed their investigation reports at their home offices."  Plaintiffs' Opposition [Dkt. No. 29], p. 23 (ECF p. 29).  On this point, the Complaint alleges the named Plaintiffs "traveled from" their homes "to perform investigations," and that they "filed" reports.  Complaint [Dkt. No. 1], ¶¶9-11. It is a fair reading of these allegations (and consistent with the facts as USIS understands them) that Plaintiffs worked from and at home, including preparing and filing reports from home.  Plaintiffs now want to dance around this fair reading, but they also do not deny having worked at home, and they suggest the Court might assume that fact *arguendo*.  Plaintiffs' Opposition, pp. 23-24 (ECF pp. 29-30).  Under these circumstances, Plaintiffs should be bound by the fair reading of

---

[3]    Plaintiffs quibble with Defendants referring to the WARN Act regulation in question, 20 C.F.R. § 639.3(i)(6), as the "mobile employees" regulation.  But as the *Meson* court noted, the Department of Labor's commentary to these regulations "refer[s] to subpart (6) as 'the part of the regulation relating to mobile workers.'"  *Meson v. GATX Technology Services Corp.*, 507 F.3d 803, 810 (4th Cir. 2007).

[4]    Plaintiffs note that Defendants were able to anticipate Plaintiffs' reliance on the mobile employees regulation because the issue previously arose in the initial scheduling conference with the District Court in Mr. Karaniewsky's prior action in the Western District of Pennsylvania.  Plaintiffs' Opposition, p. 21 (ECF p. 27). Plaintiffs say this means this Motion is "USIS's second bite at this apple."  *Id.*  This is not true in the slightest. The District Court in the prior action was never asked to rule on the issue, and did not rule on the issue.  The parties merely stated their conflicting positions on the point at a scheduling conference.  Since that time, despite ample opportunity to do so, Plaintiffs have been unable to overcome this fatal flaw in their legal theory.

their initial pleading unless Plaintiffs are prepared to now actually plead, subject to Rule 11, that

they did not use their homes as home offices and did not prepare and file their investigation

reports there.

Plaintiffs next argue, disingenuously, that *Meson* "contains language that directly

contradicts Defendants' argument."  Plaintiffs' Opposition [Dkt. No. 21], p. 24 (ECF p. 30).

Plaintiffs' claim in this regard is that *Meson* supposedly recognized "that people 'who work

primarily out of their homes and cars . . .' fall within scope [*sic*] of the mobile employee

classification, while, those, who 'work out of fixed offices,' like the plaintiff in *Meson*, do not.

*Id*. [*Meson*] at 809."  *Id*.  But *Meson* makes no such general statement, and Plaintiffs partial

quotation is, at best, misleading.  That portion of the *Meson* case was actually making a point

specific to traveling salespersons (who are expressly called out in the regulation as being

covered), and the point was that the mobile employees regulation should be construed narrowly,

not broadly.  The full sentence from which Plaintiffs selectively quoted reads:

> Although the [regulation] provision includes "salespersons" as examples, the
> context suggests that this reference is to traveling salespersons who work
> primarily out of their homes or cars, rather than those who work out of fixed
> offices.

*Meson*, 507 F.3d at 809.

In that same portion of the opinion, the *Meson* court concluded that the specific examples

of covered employees stated in the regulation – "(e.g., railroad workers, bus drivers,

salespersons)" – supported the court's view that the regulation should be limited to "truly mobile

workers."  *Meson*, 507 F.3d at 809-10 ("[W]e believe [the regulation] was intended to apply only

to truly mobile workers without a regular, fixed place of work. . . . The examples provided in

subpart (6) also support this view.").  Plaintiffs try to rebut this logic by arguing that, because the

term "*e.g.*" means "for example," the "*e.g.*" phrase in the mobile employees regulation cannot

inform how the regulation should be interpreted.  Plaintiffs' Opposition, pp. 27-28 (ECF pp. 33-34).  This ignores the fact that the *Meson* court concluded the exact opposite.  It also ignores the fact that, as even Plaintiffs acknowledge in their argument, the term "e.g." introduces a list of *representative* examples.  *Id.*; *see also* Bryan A. Garner, A Dictionary of Modern Legal Usage 307 (Oxford University Press 2d Ed. 2001) ("e.g., the abbreviation for the Latin phrase *exempli gratia* (= for example), introduces representative examples.").

*Meson* did not involve a home-based worker, but neither did Defendants say it did.  Rather, Defendants cited and quoted *Meson*, appropriately, for its analysis of the regulation and its conclusion that it should be construed narrowly as applying only to "truly mobile" workers.

Plaintiffs argue, at page 22 of their Opposition (ECF p. 28), that Defendants' interpretation of the mobile workers regulation was "tacitly rejected" in *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139 (3d Cir. 1998), but this is not so.  As Defendants noted in their Motion, there was no question raised or discussed in *Ciarlante* about whether the mobile employees regulation applied in that case, and this is not surprising because *Ciarlante* involved traveling salespersons and "salespersons" are expressly listed in the regulation as examples of covered employees.  Defendants' Motion, p. 10 (ECF p. 17).  Indeed, Plaintiffs inadvertently but accurately characterize the *Ciarlante* court's lack of analysis when they say elsewhere in their Opposition that the *Ciarlante* court "took for granted" that the mobile employees regulation applied to the case before it.  Plaintiffs' Opposition, p. 23 (ECF p. 29).

As explained in Defendants' Motion, pp. 8-9 (ECF pp. 12-13), the *Storehouse* case is on point and supports Defendants' argument with a careful and persuasive analysis based on the Fourth Circuit's *Meson* decision.  Plaintiffs say *Storehouse* is distinguishable because it was decided on summary judgment, but the *Storehouse* analysis is easily applied to Plaintiffs' facts,

as pled, as a matter of law.  Plaintiffs have pled that they worked from their homes, and the court

can determine as a matter of law that the kind of work they did, as pled in the Complaint, does

not put them in the category of "truly mobile" workers described in the regulation, "*e.g.,* railroad

workers, bus drivers, salespersons."  Plaintiffs say *Storehouse* "contradicts the holding of

*Ciarlante,*" but as already explained *Ciarlante* neither analyzed nor decided the breadth of

coverage of the mobile employees regulation.  Plaintiffs cite to the dissent in *Ciarlante*, but of

course the dissent is not part of the holding.  Finally, Plaintiffs attempt to discount the Fourth

Circuit analysis in *Meson,* relied on by *Storehouse*, that Congress intentionally limited

application of the WARN Act to only those layoffs affecting 50 or more people *in a single locale*

(single site of employment).  Plaintiffs point out that another purpose of the WARN Act is to

provide protection to employees, but this in no way contradicts the fact that Congress plainly

intended that these protections would be available only for layoffs that affect a large number of

employees at a single location.  If Congress had not intended that limitation, it would not have

specified in the statute that WARN notice can be triggered only if there are at least 50

employment losses at a "single site of employment."

Finally, Plaintiffs rely on three cases they say have interpreted the mobile employees

regulation adversely to Defendants' argument.  Opposition, p. 28 (ECF p. 34).  The Circuit Court

of Appeals decision in this group, *Bader v. N. Line Layers, Inc*., 503 F.3d 813 (9th Cir. 2007),

supports Defendants, not Plaintiffs.  In *Bader*, construction workers temporarily assigned to

work at remote construction sites argued that the company's headquarters location was their

correct "single site of employment" for WARN Act purposes.  The workers tried to rely on the

mobile employees regulation, but the Ninth Circuit "disagree[d] with Plaintiffs' interpretation of

7

the regulation."  The court began its analysis by explaining why, in the court's view, the mobile

employees regulation likely did not apply to the plaintiffs:

> We note at the outset that Plaintiffs may not have been "outstationed" at all.  The term most logically connotes a situation where employees live for a short period of time at a certain site, departing for home when the work is done. *Accord Wiltz v. M/G Transp. Servs., Inc.,* 128 F.3d 957, 962 (6th Cir. 1997).  The remote construction workers, by contrast, were generally not residents of Montana [where the company's headquarters was located] and did not, therefore, consider Billings to be their home.  The DOL's comments explain that its regulation was intended to apply to "mobile workers," including "outstationed workers and traveling workers who report to but do not work out of a particular office."  Worker Adjustment and Retraining Notification, 54 Fed. Reg. 16,042, 16051 (Apr. 20, 1989).  The DOL also noted that in the construction industry, many workers at dispersed projects would be stationed at sites for temporary projects only and therefore would not trigger WARN Act coverage. *Id.* at 16,055.

*Bader*, 503 F.3d at 819.  After thus indicating that the mobile employee regulation probably did

not even apply, the court went on to conclude that, even if the regulation applied, the plaintiffs

could not demonstrate that the company headquarters location was the appropriate single site of

employment.  *Id.*[5]  The Ninth Circuit's analysis supports Defendants, not Plaintiffs.

Finally, Plaintiffs cite *Kephart v. Data Sys. Int'l, Inc*., 243 F. Supp. 2d 1205 (D. Kan.

2003), and *Gray v. Oracle Corp*., 2005 WL 3132344 (D. Utah Nov. 22, 2005) ("*Gray I*").

*Kephart* merely assumed, without analysis, that the mobile employees regulation automatically

applies in every circumstance.  *Kephart*, 243 F. Supp. 2d at 1222.  *Gray I* is similarly weak

support for Plaintiffs because, while it declined to dismiss the claim of a plaintiff who said he

was "outstationed," the court relied on *Kephart* (which as noted entirely lacks analysis), while

also noting the plaintiff was *pro se* and, as such, the court was required to construe his complaint

---

[5]    The Ninth Circuit conducted this analysis after noting, without agreeing, that "some courts look directly to the [mobile employees] regulation's three definitions of 'single site of employment' in order to decide whether a group of employees qualifies," citing to the *Ciarlante* case.  *Bader*, 503 F.3d at 819.  As already explained, however, *Ciarlante* merely assumed the applicability of the mobile employees regulation to a case involving traveling salespersons, based on the regulation's express reference to "salespersons" as being covered.

liberally.  *Gray I*, 2005 WL 3132344, *5-6.  The court later dismissed *Gray's* claim on summary

judgment on the basis that his single site of employment was either his home in Salt Lake or an

office in Salt Lake, not the company's California headquarters where WARN had been triggered.

*Gray v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 83202, *4-5 (D. Utah Nov. 8, 2007) ("*Gray II*").

Neither *Kephart* nor *Gray* is persuasive authority for Plaintiffs' position.

 For all of these reasons, the mobile employees regulation – on which Plaintiffs' single

site of employment allegations hinge – does not apply to this case as a matter of law.

  **2. Even if the Mobile Employees Regulation Applied Here, The Facts Pled Do Not State a Claim Under the *Iqbal/Twombly* Standard.**

 Even if the mobile employees regulation applied here (which it does not), Plaintiffs have

not alleged actual facts, as opposed to legal conclusions, supporting Plaintiffs' claim that the

distant Pennsylvania and Virginia facilities were the locations "from which their work was

assigned" or "to which they reported."  As explained in Defendants' Motion, pp. 10-11 (ECF pp.

14-15), Plaintiffs' allegations merely track the language of the regulation and, as such, fail to

satisfy the *Iqbal/Twombly* standard.

 This is not a problem that Plaintiffs can rectify by repleading, because Plaintiffs make no

claim to being able to provide any more specific facts.  Plaintiffs' Opposition, pp. 29-31 (ECF

pp. 35-37).  Instead, Plaintiffs' argument is that bare allegations of locations from which work

was assigned and to which reports went are "factual allegations," not "legal conclusions."

Opposition, p. 30 (ECF p. 36).  This argument cannot withstand scrutiny.  Plaintiff cannot deny

that their "factual" allegations are merely copied from the mobile employee regulation, which

encompasses the locations "from which their work is assigned, or to which they report."  20

C.F.R. § 639.3(i)(6).  A pleading such as this, "offering only labels and conclusions or a

formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

Moreover, and most tellingly, Plaintiffs say that their conclusory pleading should be enough because they *don't have* facts to provide a more concrete allegation.  Plaintiffs claim that they "don't know for certain exactly where their reports were sent or where their instructions were coming from."  Plaintiffs' Opposition, p. 30 (ECF p. 36).  Plaintiffs seek to turn their inability to plead actual facts into a virtue by claiming that a mere recitation of the words of the regulation is "sufficient to unlock the door to discovery."  *Id*.  But this is precisely the "sue first, provide a credible factual basis later" approach that *Iqbal* and *Twombly* condemn, and which this Court should not permit.  *Iqbal*, 556 U.S. at 678-79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

Plaintiffs' arguments demonstrate that they are not in possession of facts sufficient to provide a plausible basis for their single site of employment claim.  Plaintiffs' Complaint should therefore be dismissed without leave to amend.

**C.      The Complaint Fails to Allege Facts (Not Legal Conclusions) Showing That Any Altegrity Defendant Is a "Single Employer" With USIS**

Plaintiffs implicitly concede that the conclusory allegations in the Complaint itself do not adequately allege that the Altegrity Defendants were a "single employer" with USIS.  Plaintiffs did not respond to Defendants' arguments that (a) allegations of common ownership and common directors and officers are not sufficient to establish single employer status, (b) the Complaint's allegations with regard to the exercise of *de facto* control are entirely conclusory, and (c) the Complaint includes no allegations with regard to the other single-employer factors. Plaintiffs' defective pleading should be dismissed.

**D.      The Facts of Which Plaintiffs Now Seek Judicial Notice Do Not Permit Them to Cure Their Defective Pleading With Regard to the Single-Employer Claim**

The additional facts on which Plaintiffs now seek to rely, but which are not reflected in the Complaint, raise the question of whether Plaintiffs should be granted leave to replead their

single-employer claim.[6]  Defendants submit that, for the reasons discussed below, Plaintiffs have

not shown that they have facts that would permit them to file an amended pleading that would

pass muster under *Iqbal* and *Twombly*.  For that reason, the dismissal of the claims against the

Altegrity Defendants should be with prejudice and without leave to amend, based on futility.

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 n.8 (3d Cir. 2010)

(affirming trial court's dismissal of complaint without leave to amend based on futility).

The additional facts that Plaintiffs cite would allow Plaintiffs to plead only that the

Altegrity Defendants shared with USIS the kind of close corporate relationship that typifies the

relationship between a wholly-owned subsidiary and its corporate parent.  But that is the most

that those facts support.  As a matter of law, this is insufficient to impose a subsidiary's WARN

Act liability on its corporate parent.  Rather, as interpreted by the Third Circuit, the five-factor

single-employer test requires "functional integration" between the two corporations in order to

avoid the usual rule of corporate separateness.  *Pearson v. Component Tech. Corp.*, 247 F.3d

471, 495 (3d Cir. 2001).  The test is intended to discover whether the two entities "actually

functioned as a single business, particularly with regard to labor policy."  *Id*. at 498.  The single-

employer claim fails absent this "high degree of integration."  *Id.,* 247 F.3d at 505.  A review of

how the Third Circuit applies this five-factor test shows that Plaintiffs remain unable to plead

facts sufficient to support a plausible single-employer claim.

---

[6]    Defendants do not oppose Plaintiffs' request for judicial notice of adjudicative facts not subject to reasonable
dispute that exist in the Debtors' bankruptcy case filings.  The Court's consideration of those facts will help
confirm that allowing Plaintiffs leave to replead the single-employer claim against the Altegrity Defendants
would be futile.  The record before the Court, including judicially-noticeable facts, demonstrates that Plaintiffs
are unable to plead facts sufficient to demonstrate a plausible claim.

### 1.     The Five-Factor Test

To reiterate briefly, the five factors of the test are: "(1) common ownership, (2) common directors and/or officers, (3) *de facto* exercise of control, (4) unity of personnel policies emanating from a common source, and (5) dependency of operations." *In re APA Transport Corp. Consol. Litig.*, 541 F.3d 233, 243 (3d Cir. 2008) (*citing Pearson v. Component Tech. Corp.*, 247 F.3d 471, 487-90 (3d Cir. 2001)).

### 2.     Factors 1 and 2 - Common Ownership and Common Directors And/Or Officers

Defendants will assume for purposes of this Motion that Plaintiffs would be able to properly allege the existence of the first and second factors, common ownership and common directors and/or officers.[7]  Those two factors are not sufficient, however, to establish single-employer status.  *APA Transport*, 541 F.3d at 244.  For this reason, the last three factors "are often the determinative factors." *Hampton v. Navigation Capital Partners, Inc.*, No. 13-747-LPS, 2014 U.S. Dist. LEXIS 114930, at *7 (D. Del. Aug. 19, 2014).

### 3.     Factor 3 - *De Facto* Control

The third factor, *de facto* exercise of control, "is not intended to support liability based on a parent's exercise of control pursuant to the ordinary incidents of stock ownership." *Pearson*, 247 F.3d at 503.  Rather, a parent corporation is free to "control[] its subsidiary's boards of directors without incurring liability." *Id.* at 502.  This being the case, any allegation of *de facto* exercise of control by the Altegrity Defendants cannot be based on Plaintiffs' assumption that USIS's owner "must have" been involved with the furlough and layoff decisions.  That assumption, even if valid (which it is not), does not support a conclusion that the Altegrity

---

[7]     Plaintiffs do not allege, however, and cannot allege, that USIS's operational officers overlapped those of the Altegrity Defendants.

Defendants' alleged involvement exceeded the control they were privileged to exercise through the directors they elected to USIS's board.

Further, the "core of [the *de facto* control] factor is whether one company 'was the decisionmaker responsible for the employment practice giving rise to the litigation.'" *APA Transport*, 541 F.3d at 244-45.  Plaintiffs have presented no factual basis beyond mere speculation that USIS's managers, officers and directors did not act independently to furlough employees when the U.S. Government ordered worked stopped on the contract those employees were servicing (Plaintiffs' Opposition [Dkt. No. 21], p. 3 (ECF p. 9)), or that USIS's managers, officers and directors did not act independently to terminate employees when the U.S. Government ended the contract on which those employees were working (*id*.).  Certainly the officers, managers and directors of an operating subsidiary such as USIS, when confronted with a government-ordered stop work order, or the subsequent loss of a government contract, are capable of implementing on their own the obvious business conclusion to furlough and then lay off the employees who were working under the government contract.  Indeed, the actions of the U.S. Government, as admitted by Plaintiffs, left USIS with no choice *other* than to implement the furloughs and layoffs.  There is nothing about any of these factual circumstances that gives plausibility (beyond speculation) to the Plaintiffs' theory that USIS would not have taken those actions unless the Altegrity Defendants ordered them to do so.

In addition, much of Plaintiffs' *de facto* control argument is based on the speculation that the Altegrity Defendants must have controlled the decisions to file for bankruptcy and wind down USIS's business.  That argument is entirely off point.  As just noted, the core of the *de facto* control factor is whether the Altegrity Defendants were the decision makers responsible *for the employment practice giving rise to the litigation*, that is, the furloughs and layoffs about

13

which Plaintiffs complain.  As admitted by Plaintiffs, USIS implemented the furloughs in August 2014, and the layoffs in September 2014.  Plaintiffs' Opposition [Dkt. No. 21], p. 3 (ECF p. 9). Debtors did not file bankruptcy until more than four months later, on February 8, 2015.  *Id*., p. 4 (ECF p. 10).  Neither the post-layoff winding down of USIS's business nor the bankruptcy filing is alleged to be a basis of WARN Act liability.  As such, Plaintiffs' speculation about the decision making they assume must have gone on relating to those actions has no relevance to the WARN Act single-employer claim.

### 4.    Factor 4 - Unity of Personnel Policies

The fourth factor in the Third Circuit's single-employer test is whether there was a unity of personnel policies emanating from a common source.  "The overall question [for this factor] is whether the companies 'actually functioned as a single entity with regard to [their] relationship[] with employees.'"  *APA Transport*, 545 F.2d at 245 (quoting *Pearson*, 247 F.3d at 499).  "To reach an answer" on this factor, the court considers "whether the two companies in question engaged in centralized hiring and firing, payment of wages, and personnel and benefits recordkeeping."  *Id*.  For this factor to be considered in Plaintiffs' favor, it is not enough to allege that the companies shared some employee functions, such as benefit plans and employee monitoring.  *Id*.[8]  Rather, the two companies must have "actually functioned as a single entity" with regard to their respective employees.  *Id*.  Plaintiffs have offered nothing but speculation that the Altegrity Defendants and USIS actually functioned as a single entity with regard to their employee relations.

---

[8]    Also, Plaintiffs do not allege, and cannot allege, that USIS shared the same benefits package or security policies with the Altegrity Defendants.

### 5.    Factor 5 – Mutual Dependency of Operations

The fifth and final factor in the Third Circuit's single-employer test is dependency of operations.  This factor analyzes whether two companies are "dependent on one other" by looking at the existence of arrangements such as "the sharing of administrative or purchasing services, interchanges of employees or equipment, or commingled finances."  *APA Transport*, 541 F.3d at 245.  The test is whether the two companies were "'dependent' upon one another to continue [in] operation."  *Id.*  This factor, "by its nature, looks to the daily functioning of the two companies."  *Pearson*, 247 F.3d at 501.  Intercompany loans do not establish dependency of operations.  *APA Transport*, 541 F.3d at 245.  And "dependency of operations cannot be established by the parent corporation's exercise of its ordinary powers of ownership, *i.e.,* to vote in directors and set general policies."  *Pearson*, 247 F.3d at 501.  None of the facts relied upon by Plaintiffs give any inkling that USIS and the Altegrity Defendants were dependent upon one another to continue operating in their day-to-day activities.  Again, the facts show only a normal parent/subsidiary relationship.

### 6.    Plaintiffs Have Not Shown a Facially Plausible Single-Employer Claim Under the Five-Factor Test

In summary, the only facts that Plaintiffs could plead in an amended complaint would imply nothing other than a normal, arm's length parent-subsidiary relationship.  This is not a "facially plausible" single-employer claim under *Iqbal* and *Twombly*, because it does not provide "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Plaintiffs argue that a different standard applies to this parent/subsidiary relationship than would apply if the Altegrity Defendants were a private equity firm.  Plaintiffs cite no authority for this proposition, however, and there is none.  The court will see when reading the *Pearson*

and *APA Transport* cases that the Third Circuit's test applies to all affiliated company relationships, including ordinary parent/subsidiary relationships.  Indeed, the *APA Transport* case involved a conventional sister corporation relationship between two companies – APA Transport and APA Truck Leasing – that were commonly owned by two individual shareholders. *APA Transport*, 541 F.3d at 235.

Plaintiffs rely on *Hampton v. Navigation Capital Partners, Inc*., No. 13-747-LPS, 2014 U.S. Dist. LEXIS 114930 (D. Del. Aug. 19, 2014), but that reliance is misplaced.  In fact, *Hampton* supports Defendants' Motion by giving an example of the kind of nonspeculative facts, not present in the case at bar, that are necessary for a single-employer WARN Act claim to survive a Rule 12(b) motion to dismiss.  The *Hampton* court permitted the single-employer claim to proceed in a case in which the plaintiff had alleged facts showing that the parent company "disregard[ed] the separate legal personality" of the subsidiary.  *Id*. at *12.  In addition to alleging common ownership, officers and directors, the *Hampton* plaintiff alleged that the Operational Partner of NCP (the parent company) "oversaw and managed Metadigm [the subsidiary] by serving as a bridge to the CEO," and that Metadigm "paid NCP $75,000 (plus expenses) to be managed by NCP."  *Id*. at *11.  The Hampton plaintiff also alleged that NCP had "constructed a brand (Metadigm) and used the Metadigm companies as alter egos in order to dominate a particular segment of the energy market."  *Id*. at *13.  The District Court decided that, "[i]n context, this alleged pattern of branding, acquisition, and control, is sufficient to render plausible the allegation that the relationship between Metadigm and NCP was not at arm's length."  *Id*.  Plaintiffs here do not assert, and cannot assert, allegations of a similar pattern of domination, direct control and corporate disregard.

In the final analysis, Plaintiffs have relied on mere speculation that discovery might turn up evidence to support their single-employer claim.  The recent dismissals by Judges Walrath and Sonthci, in the *Sanchez* and *Czarniak* cases (cited in Defendants' Motion) are on point.  Just as in those cases, a dismissal is called for here.  Further, because Plaintiffs' Opposition has fully demonstrated that there are insufficient facts to support a repled complaint on this claim, the dismissal should be entered without leave to replead.

### E.    Plaintiffs Concede That Plaintiffs' Prayer for Administrative Expense Priority Should Be Dismissed

Plaintiffs state in their Opposition, "Plaintiffs concede that their claim should not be awarded an administrative expense priority as a matter of law."  Plaintiffs' Opposition [Dkt. No. 21], p. 2 (ECF p. 8), n. 2.  The prayer in the Complaint for "a first priority administrative expense claim against Defendants pursuant to 11 U.S.C. § 503(b)(1)(A)(ii)," Complaint [Dkt. No. 1], Prayer for Relief, D, should be dismissed with prejudice and without leave to replead.

### F.    Plaintiffs' Alternative Request to Obtain Discovery By Converting This Rule 12(b) Motion to One for Summary Judgment Should Be Denied

Plaintiffs made an alternative request that, if the Court declines Plaintiffs' request for judicial notice, the Court should "convert the single employer branch of Defendants' motion to summary judgment and . . . defer consideration of the motion until discovery has been taken." Opposition [Dkt. No. 21], p. 10 (ECF p. 16).[9]  Plaintiffs' request should be denied for two reasons.

---

[9]    This was a bid by Plaintiffs to obtain discovery that is not otherwise available to them.  Discovery is not permitted to oppose a Rule 12(b) motion to dismiss.  Motion [Dkt. No. 17], p. 14 (ECF p.18).  By contrast, Rule 56(d) expressly permits discovery before resolution of a motion for summary judgment.

First, Plaintiffs made this request in the alternative with their request for judicial notice, a request that Defendants do not oppose. If the Court grants judicial notice that will moot Plaintiffs' alternative request for conversion to summary judgment.[10]

Second, when, as here, a defendant does not seek to rely on matters outside the complaint for its motion to dismiss,[11] the fact that the plaintiff does so does not justify converting the defendant's motion to one for summary judgment. *Ranch Realty, Inc. v. DC Ranch Realty, LLC*, 614 F. Supp. 2d 983, 988 (D. Ariz. 2007) ("Plaintiff does not provide any support for its fundamental assumption that a non-moving party can convert a motion to dismiss into a motion for summary judgment by including extraneous material in its response."). Indeed, the reason a court must convert a motion to dismiss on the pleadings to one for summary judgment if the court considers matters outside the pleadings is to give the plaintiff a fair opportunity to respond to a defendant's evidence-based attack on the plaintiff's claims. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993) ("The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond."). That reasoning has no application where the plaintiff is the only source of extra-pleading material.

For these reasons, the Court should deny Plaintiffs' request that the single-employer aspect of the Motion be converted to summary judgment and then delayed pending discovery.

---

[10] Granting judicial notice will not convert Defendants' Motion to one for summary judgment. Plaintiffs make this point themselves. Plaintiffs' Opposition [Dkt. No. 21], p. 9. Defendants agree. The "pleadings" that may be considered on a Rule 12(b) motion to dismiss include not only the complaint itself but also matters of public record. *Id.*

[11] Defendants' Motion [Dkt. No. 17], p. 3 (ECF p. 7) ("This Motion is based solely on the specific facts that are alleged in, or omitted from, the Complaint.")

### III.  CONCLUSION

Plaintiffs have not alleged, and cannot allege, facts showing that the named Plaintiffs were employed at a "single site of employment" (as defined in the WARN Act) at which 50 or more employees suffered employment losses.  Even if the mobile employees regulation applied to their situation (which it does not), Plaintiffs say they can't plead actual facts relevant to the standard set out in that regulation.  Supposedly they don't know from where they received their assignments and to where they reported.[12]  Plaintiffs are not permitted to "unlock the door to discovery" by saying they don't know whether there are actual facts supporting their claim.

Plaintiffs also have not alleged, and cannot allege, facts showing that the Altegrity Defendants were a single employer with USIS under the five-factor single-employer test. Plaintiffs' Opposition has revealed that Plaintiffs' addition of the Altegrity Defendants to this case was based on pure speculation that discovery might turn up facts to support a single-employer claim.  Facts showing that such a claim is plausible, not mere speculation, are simply not there.

If *Iqbal* and *Twombly* mean anything, the kind of unsupported, conclusory Complaint that Plaintiffs have filed in this case cannot stand.  Discovery is not designed to provide plaintiffs with the facts needed to plead a claim in the first instance.  Indeed, the Supreme Court expressly emphasized the importance of not having a "largely groundless claim" be allowed to "take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Twombly*, 550 U.S. at 558 (citations omitted).  The Complaint should be dismissed, with prejudice and without leave to replead.

---

[12] Defendants believe Plaintiffs *do* know these facts.  The discovery Plaintiffs obtained in the Pennsylvania action included an employee list showing all supervisor reporting relationships and locations.  Plaintiffs wish to avoid pleading the known fact that their direct supervisors also worked at remote locations at which WARN notice also was not triggered.

Dated:  April 24, 2015               */s/ Joseph M. Barry*
        Wilmington, Delaware      **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Edmon L. Morton (No. 3856)
Joseph M. Barry (No. 4221)
Ryan M. Bartley (No. 4985)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253
Email:  emorton@ycst.com
        jbarry@ycst.com
        rbartley@ycst.com

-and-

**LITTLER MENDELSON, P.C.**
Daniel L. Thieme, *Pro Hac Vice*
Deidra A. Nguyen, *Pro Hac Vice*
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101
Tel:    206-623-3300
Fax:    206-447-6965
Email:  dthieme@littler.com
        DANguyen@littler.com

Rod Fliegel, *Pro Hac Vice*
650 California Street, 20th Floor
San Francisco, California 94108
Tel:    415-433-1940
Fax:    415-399-8490
Email:  rfliegel@littler.com

-and-

**DEBEVOISE & PLIMPTON LLP**
John S. Kiernan, *Pro Hac Vice*
M. Natasha Labovitz, *Pro Hac Vice*
919 Third Avenue
New York, New York 10022
Tel:    (212) 909-6000
Fax:    (212) 909-6836
Email:  jskiernan@debevoise.com
        nlabovitz@debevoise.com

*Counsel for Defendants*

Firmwide:133087082.4 065061.1025